In the Matter of LANCASTER FACTORING COMPANY LIMITED, as Agent for Laborvetro, Petitioner–Appellee,

v.

Louis A. MANGONE, Appellant.

No. 2203, Docket 96–7497.

United States Court of Appeals, Second Circuit.

Argued June 20, 1996.

Decided July 19, 1996.

Joseph L. Cook, Roseland, New Jersey (Beth A. Zindler, Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rosen, Roseland, New Jersey, on the brief), for Petitioner–Appellee.

Elliot Schnapp, New York City, for Appellant.

Before: KEARSE, MAHONEY, and McLAUGHLIN, Circuit Judges.

KEARSE, Circuit Judge:

Louis A. Mangone appeals from an order of the United States District Court for the Southern District of New York, Richard Owen, *Judge,* requiring him to comply with a subpoena authorized by the court pursuant to 28 U.S.C. § 1782 (1994) on the application of petitioner Lancaster Factoring Company Limited ("Lancaster"), calling for testimony and documents concerning certain financial transactions of Laborvetro S.p.A. On appeal, Mangone contends that the court should have declined to enforce the subpoena on the ground that Lancaster failed to meet the requirements of § 1782. For the reasons that follow, we disagree and affirm.

## I. BACKGROUND

The principal characters in the events leading to the present proceeding include Laborvetro Bankruptcy, the successor-in-interest to Laborvetro S.p.A. (collectively "Laborvetro"), an Italian corporation that in 1983 filed for relief under Italian law in the bankruptcy court in Milan, Italy; Angelo Mereghetti, who was the chief executive officer and sole shareholder of Laborvetro S.p.A.; Avant Industries Ltd. ("Avant"), a New York corporation, against which Laborvetro S.p.A. had been involved in litigation in the United States; Mangone, a New York attorney who represented Laborvetro; and Gino Nahum, who was the primary business representative of Laborvetro S.p.A. in the United States prior to its bankruptcy.

Gianangelo Tosi is the court-appointed trustee for Laborvetro ("Tosi" or "Trustee") in the bankruptcy proceeding in Milan. Tosi retained Lancaster, pursuant to an agreement approved by the Milan bankruptcy court in September 1995, to pursue assets of Laborvetro in the United States.

In January 1996, Lancaster, as agent for Laborvetro, commenced the present proceeding pursuant to 28 U.S.C. § 1782, which per-

mits the district court to allow an interested person to obtain discovery for use in a proceeding in a foreign tribunal. Lancaster sought to subpoena Mangone and others to provide testimony and documents "concerning any possible funds due or which may be due to Laborvetro, or which in any way relate to or concern Laborvetro or third parties which may have had any financial transactions with or involving Laborvetro." (Petition ¶ 13.) The petition stated, *inter alia,* that the Trustee had determined

> that there may be a basis to assert very substantial claims against Mr. Nahum for conspiring with, and aiding and abetting Mr. Mereghetti to wrongfully divert substantial sums of money away from Laborvetro, causing it to become bankrupt and to be unable to pay its creditors. Accordingly, the Trustee consulted with Lancaster and reached an agreement pursuant to which the Trustee would appoint Lancaster as his representative to conduct a further investigation in the United States relating to funds which may be due to the Bankrupt from Mr. Nahum (or others with whom he may have acted in concert).

(Petition ¶ 9.) Attached to the petition was a statement by Tosi confirming that he had retained Lancaster to conduct discovery "on behalf of 'Laborvetro Bankruptcy.'" The district court authorized the subpoenas and retained jurisdiction to entertain any related application.

Lancaster thereafter served a subpoena on Mangone, who refused to comply. In March 1996, Lancaster applied to the district court for an order requiring him to produce information with respect to, *inter alia,* Laborvetro's banking activities during a several-year period beginning January 1, 1979.

Mangone opposed Lancaster's application, arguing principally that the requirements of § 1782 were not met because Lancaster had not shown that it was an "interested person" or that there would be a "proceeding" within the meaning of that section. He contended that the present subpoena was designed merely to permit Lancaster to obtain information in order to determine whether it wished to purchase claims from the Trustee upon which Lancaster then might or might not commence a proceeding. At the hearing on Lancaster's application to enforce the subpoena against him, Mangone argued that

> [the agreement by Tosi] says I don't know if I have a claim against Mr. Nahum. If you are interested in buying whatever I have, I am going to grant you an option and in accordance with that option you can go out throughout the world and see whether or not I, the trustee of the Laborvetro bankruptcy, have any claims against Mr. Nahum, and, if so, what they are like, and then if you, Lancaster, decide that I may have a claim and that it is of such a nature and that you may be interested in acquiring it, you can exercise the option and pay me ... something.

(Transcript of April 26, 1996 enforcement hearing ("Tr.") 14–15.) Mangone argued that Lancaster's interest was too remote to satisfy § 1782 and that the possibility of Lancaster's commencing a proceeding was speculative.

In support of enforcement, Lancaster submitted an affidavit from Tosi stating, *inter alia,* that Tosi is "the Bankruptcy Court appointed Trustee for Laborvetro Bankruptcy, which is pending in the Court of Milan" (Tosi Affidavit dated March 27, 1996, ¶ 1), that

> the appointment of Lancaster Factoring Company Limited ("Lancaster") to carry out every and all activities for the purpose of recovering money and/or credits toward Mr. Gino Nahum (and others) in the U.S.A., has been conferred by this Laborvetro Bankruptcy upon authorization of the Bankruptcy Court of Milan dated September 28, 1995

(*id.* ¶ 2), and that

> the proceeding initiated in New York for recovering funds is strictly related to the interest of this Laborvetro Bankruptcy and of its creditors who ... have entrusted "Lancaster" to carry out said recovery

(*id.* ¶ 4). Lancaster's attorney stated that earlier discovery had produced evidence that "hundreds of thousands of dollars" belonging to Laborvetro had been transferred by Nahum to a bank in Florida, that Mangone had instructed the bank not to disclose the

existence of those accounts, that after those records were disclosed in Italy, criminal proceedings were brought against Nahum, Mereghetti, and others (Tr. 3–4), and that

> [i]n 1992 a somewhat in excess of $5 million judgment was entered against Mr. Nahum for the diversion of these funds from Laborvetro. Again, Mr. Nahum was then the American representative of Laborvetro. Angelo Mereghetti, the president and sole shareholder of Laborvetro—a fine was imposed against him for somewhat in excess of $5 million. What we are seeking to find out is where did this money go? Who has it? How can we recover it?

(Tr. 4–5.) Tosi's March 27, 1996 affidavit stated that Mereghetti testified in the criminal trial that some of his personal dealing with Laborvetro's United States checking accounts had been undertaken with the advice of Laborvetro's United States lawyer.

The district court concluded that Mangone's objections to the subpoena were insufficient and that they in part even supported Lancaster's petition. The court accepted the representations by Tosi that

> he is the trustee in bankruptcy there, he says there is an authorization in the bankruptcy court of Milan dated September 28, 1995, and that that appoints Lancaster to carry out every activity for the purpose of recovering money and/or credits toward Mr. Gino Nahum in the USA.

> That is sufficient for me in the absence of anything to the contrary and Mr. Tosi is a perjurer if it's false and it doesn't have any indicia to me of being false. It even gives the date of the order. So I will accept that.

> Now, that, it seems to me, does away with any claim of no proceeding or that Lancaster is not interested. Lancaster is, indeed, authorized to act as the trustee's agent here to do the recovery.

(Tr. 19–20.) The court ordered Mangone to produce information with respect to, *inter alia*, Laborvetro's financial transactions for the period January 1, 1979, to December 31, 1984.

Mangone appealed and sought a stay pending appeal. We granted the stay and expedited the appeal. We now affirm.

## II. DISCUSSION

■ Section 1782 of Title 28 provides, in pertinent part, as follows:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made pursuant to a ... request made[ ] by a foreign or international tribunal or upon the application of any interested person....

28 U.S.C. § 1782(a). The goals of the statute, which dates back to 1855, are to provide "equitable and efficacious" discovery procedures in United States courts "for the benefit of tribunals and litigants involved in litigation with international aspects," S.Rep. No. 1580, 88th Cong., 2d Sess. 2 (1964) ("Senate Report"), *reprinted in* 1964 U.S.C.C.A.N. 3782, 3783, and to "encourag[e] foreign countries by example to provide similar means of assistance to our courts," *In re Malev Hungarian Airlines,* 964 F.2d 97, 100 (2d Cir.), *cert. denied,* 506 U.S. 861, 113 S.Ct. 179, 121 L.Ed.2d 125 (1992). In pursuit of these twin goals, the section has, over the years, been given "increasingly broad applicability." *In re Gianoli Aldunate,* 3 F.3d 54, 57 (2d Cir.), *cert. denied,* 510 U.S. 965, 114 S.Ct. 443, 126 L.Ed.2d 376 (1993).

■ The principal requirement imposed by § 1782 is that the requested discovery be for use in "a proceeding." We have interpreted this to mean a proceeding in which an adjudicative function is being exercised. *See In re Letters Rogatory Issued by the Director of Inspection of the Government of India,* 385 F.2d 1017, 1021 (2d Cir.1967) (overturning grant of discovery to foreign tax collecting authority whose function was to assert governmental interests rather than to adjudicate them). We have held that a foreign competency proceeding, in connection with which the court-appointed provisional guardians sought discovery in order to inventory the incompetent's property, was a proceeding within the meaning of § 1782. *See*

**42**

*In re Gianoli Aldunate*, 3 F.3d at 62. Where no adjudicative proceeding is pending, we have held that § 1782 does not authorize the district court to order discovery unless such adjudicative proceedings are "imminent—very likely to occur and very soon to occur." *In re Request for International Judicial Assistance (Letter Rogatory) for the Federative Republic of Brazil*, 936 F.2d 702, 706 (2d Cir.1991) ("*Brazil* ").

■ If the district court has properly interpreted the requirements of § 1782, its decision whether or not to order discovery is reviewed only for abuse of discretion. *See, e.g., In re Gianoli Aldunate*, 3 F.3d at 58. The court will be found to have abused its discretion "only if there was no reasonable basis for [its] decision." *SEC v. Bausch & Lomb Inc.*, 565 F.2d 8, 18 (2d Cir.1977). We see no misinterpretation of the law or abuse of discretion here.

■ Mangone, relying on *Brazil*, argues that the imminent-proceeding requirement is not met because Lancaster may or may not exercise its option to acquire whatever claims it may find and may or may not decide to commence a proceeding to pursue those claims. This argument is wide of the mark, however, for *Brazil* dealt with the applicability of § 1782 "in the absence of a pending adjudicative proceeding," 936 F.2d at 703; here, in contrast, regardless of what may happen in the future, there is already a proceeding pending, to wit, the bankruptcy proceeding in Milan. A bankruptcy proceeding, by its nature, is one in which the value of the debtor's estate is adjudicated. Such a proceeding is within the intended scope of § 1782.

The record in the district court clearly indicated that the Laborvetro bankruptcy proceeding was then pending. Tosi's March 27, 1996 affidavit stated, *inter alia*, that the Laborvetro bankruptcy "is pending in the Court of Milan." At the enforcement hearing, Mangone himself described the Laborvetro bankruptcy proceeding as a "proceeding that is pending in Italy" (Tr. 14); and though he disclaimed actual knowledge as to whether the bankruptcy proceeding was still pending, he stated that he "assume[d]" that it was (*id.* at 13). Since in the district court Man-

gone did not dispute the pendency of the bankruptcy proceeding, any such challenge has not been preserved for appeal.

■ It appears that Mangone has abandoned his contention that Lancaster is not an "interested person" within the meaning of § 1782. In any event, that contention has no merit. The legislative history to § 1782 makes plain that "interested person" includes "a party to the foreign . . . litigation." Senate Report at 8, 1964 U.S.C.C.A.N. at 3789. Here, Laborvetro is a debtor in the Milan bankruptcy court proceeding; Tosi is its court-appointed Trustee; Lancaster is the Trustee's agent and filed the present petition in that capacity to discover "funds which may be due to the Bankrupt" (Petition ¶ 9). Indeed, Mangone himself described the relationship as one in which the Trustee had instructed Lancaster to "go out throughout the world and see whether or not I, the trustee of the Laborvetro bankruptcy, have any claims" (Tr. 14). Whatever independent interest Lancaster may eventually have in purchasing from Tosi claims that now belong to Laborvetro, it is plain that as petitioner in the present action, Lancaster is the agent for Laborvetro's trustee in bankruptcy, pursuing assets of the debtor, on behalf of the debtor. By virtue of that agency and the status of its principal, Lancaster is an interested person within the meaning of § 1782.

Instead of arguing that Lancaster is not an interested person, as he did in the district court, Mangone suggests that the district court should have exercised its discretion to deny Lancaster's application because Lancaster failed to submit to the court the actual written agreement between it and the Trustee and because it is possible that Lancaster's owner is the same person who owns Avant, giving Lancaster a conflict of interest in pursuing Laborvetro's potential claims with respect to Avant. We disagree. The statements by Tosi spell out the gist of the Trustee's agreement with Lancaster, confirm that Lancaster is acting here "on behalf of" Laborvetro to find Laborvetro's assets, and state that the agreement was expressly approved by the Milan bankruptcy court. Mangone does not dispute the authenticity of

the Tosi affidavits and presented no evidence to cast doubt on the truth of their assertions. The district court did not abuse its discretion in declining to second-guess the Milan court's approval of the Trustee's designation of Lancaster as his agent to investigate Laborvetro's claims.

We note that at the oral argument of this appeal counsel for Mangone proffered to this Court documents he stated he had just received from Italy. Those documents were not part of the record in the district court and had not been seen by counsel for Lancaster. We declined to receive the documents at that time, instructing Mangone's attorney to furnish petitioner's counsel with copies, following which Mangone could renew his application to add those documents to the record. No such renewed application was made.

## CONCLUSION

We have considered all of Mangone's contentions that are properly before us on this appeal and have found them to be without merit. The order of the district court is affirmed.

The stay is dissolved. The mandate shall issue forthwith.