**In re Application of MERCK & CO., INC. For Discovery For Use in an Action Pending in the High Court of Justice of England and Wales, Chancery Division, Patents Court.**

**No. 1:00MC17.**

United States District Court,
M.D. North Carolina.

Order Amending Opinion April 28, 2000.

March 3, 2000.

W. Kearns Davis, Jr., Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, NC, for In re Application of Merck & Co., Inc. for Discovery for Use in an Account Pending in the High Court of Justice of England and Wales, Chancery Division, Patents Court, plaintiff.

Michael E. Ray, Womble, Carlyle, Sandridge & Rice, Winston–Salem, NC, Larry I. Moore, III, Adams Kleemeier Hagan Hannah & Fouts, Greensboro, NC, for Novartis Crop Protection, Inc., Collag Corp., Collag Ltd., movants.

### ORDER

ELIASON, United States Magistrate Judge.

Petitioner Merck & Co., Inc., a New Jersey corporation, has submitted an applica-

tion pursuant to 28 U.S.C. § 1782(a) for an order permitting it to take discovery in aid of a foreign proceeding. The applicant shows that an action entitled, *Collag Corp. and Collag, Ltd. v. Merck & Co., Inc.* ("Collag") was commenced in the High Court of Justice of England and Wales, Chancery Division, Patents Court, on or about June 4, 1998. The plaintiffs in that action allege that defendant Merck misappropriated and misused confidential information relating to certain pesticide formulations. Petitioner claims that one aspect of the litigation was plaintiff Collag's claim that Merck provided confidential information to Novartis Crop Protection AG ("Novartis"), a Swiss corporation, which has facilities in Greensboro, North Carolina. Novartis allegedly manufactured or procured the manufacture of a formulation using Collag's alleged confidential information. Petitioner contends that certain Novartis employees located in Greensboro, North Carolina, have information concerning whether Novartis, in fact, performed said acts.

Petitioner Merck asserts that Novartis refuses to voluntarily provide the information for the litigation pending in the United Kingdom and, therefore, it needs to obtain an order to conduct depositions pursuant to 28 U.S.C. § 1782.

In addition to an order permitting Merck to take discovery, it also requests that the Court require certain practices and procedures, to wit:

(a) The depositions of the Novartis witnesses will be conducted pursuant to the Federal Rules of Civil Procedure and recorded both by sound-and-visual means and by a United States stenographer;

(b) Stephen Bennett and Thomas Mitcheson—who are attorneys of record in the UK Litigation and, respectively, a solicitor of the Supreme Court of England and Wales and a member of the bar of England and Wales—or, at Merck's option, Merck's U.S. counsel, will be allowed to depose the witnesses on behalf of Merck;

(c) Collag's English counsel or, at Collag's option, its U.S. counsel will be allowed to cross-examine the Novartis witnesses on behalf of Collag;

(d) The parties may depose the witnesses by way of videoconference;

(e) The form of confidentiality undertaking which is being used in the UK Litigation (Exhibit 3) will apply to the depositions of the Novartis witnesses, unless the parties agree to another form of confidentiality agreement; and

(f) Unless waived by the parties or Novartis, the Novartis witnesses will be permitted to review their transcripts and make changes pursuant to Fed.R.Civ.P. 30(e).

(Application at 4)

Petitioner Merck states that Novartis does not object to the depositions and that Merck has requested that Collag agree to the depositions. It further states that it has provided copies of the Application by U.S. Mail and fax to Collag's counsel and to Novartis' counsel. Petitioner wants to take the depositions on March 7 and 8, 2000, in Winston–Salem, North Carolina. The Application was submitted to the undersigned for review on February 28, 2000. The undersigned instructed the Clerk to hold the matter until the other parties in the United Kingdom action had time to file a response. Thereafter, petitioner Merck submitted a letter dated February 29, 2000 wherein it instructed the Court:

> I write to clarify that this is an *ex parte* matter under 28 U.S.C. § 1782 to which there are no other parties, so that there is no one entitled to file a response. In that regard, this Application is much like a request for a subpoena to take discovery in another state in state-court litigation.

The Court was further informed by Merck that, in its view, anyone wishing to contest taking the depositions could only do so by filing a motion to quash the subpoenas after issuance. Counsel then added that both counsel for deponents and opposing counsel in the United Kingdom action were consulted about the Application and expressed no objection.

The Court takes issue with Merck's contention that every application made pursuant to 28 U.S.C. § 1782 is an *ex parte* matter in which no other party or person may participate. The Court further takes issue with

Merck's suggestion that the Court has little, if any, discretion in ruling on a Section 1782 application. Evidently, counsel expects the Court to sign any order for discovery presented to it which otherwise meets the prerequisites of Section 1782. The Court disagrees with this reading of the statute and the Court's powers and responsibilities.

In pertinent part, Section 1782(a) provides:

The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, .... The order may be made ... upon application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.... The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

 The Second Circuit has indicated that there are three basic requirements to obtain an order under Section 1782: (1) the person from whom discovery is sought must reside in the district; (2) the discovery must be for use in a proceeding before a foreign tribunal; and (3) the application can be made either by a foreign or international tribunal or "any interested person." *Application of Esses*, 101 F.3d 873, 875 (2d Cir.1996). A proceeding includes any proceeding in which an adjudicated function is being exercised or is imminent. *Lancaster Factoring Co., Ltd. v. Mangone*, 90 F.3d 38 (2d Cir.1996). An interested person includes a party to the foreign litigation, whether directly or indirectly involved. *Id.* (agent of Trustee in foreign bankruptcy proceeding).

 Contrary to petitioner Merck's assertion, a finding that a Section 1782 application meets the Second Circuit's three-prong test only satisfies the jurisdictional threshold. It does not circumscribe the Court's authority to regulate the application proceeding before it or the issuance and contents of a discovery order. Case law supports the view that not only does the Court have wide discretion to determine whether to grant discovery, but it possesses equally wide discretion to tailor such discovery to avoid attended problems. *Application of Esses*, 101 F.3d at 876. In ruling on Section 1782 applications, district courts are admonished to keep in mind two important aims—(1) to provide an efficient means of assistance to participants in foreign litigation; and (2) to encourage litigation cooperation with and from foreign countries by providing an example through fair discovery orders and by being sensible to special concerns of foreign countries. *See Application of Esses*, 101 F.3d at 876.

The Court's duty to exercise such discretion in the granting of Section 1782 applications necessarily covers regulating the application procedure itself. Nothing in Section 1782 states that the application is to be made *ex parte*, much less that the Court *must* entertain the application *ex parte*. Moreover, such a reading would seem to be contrary to the purpose of the statute, which is to help promote evenhanded justice and a sense of fair treatment. To that end, the Court need not confine itself to the assertions set out in the application. It necessarily has inherent authority to require that other parties to the foreign litigation be notified of the application and be allowed to present their views to the Court. This is also supported by the provisions of Section 1782 which provide the Court with authority to approve the practice and procedure of the discovery, and by virtue of the fact that in absence of any special practice and procedure, the discovery is governed in accordance with the Federal Rules of Civil Procedure. (Those rules require that opposing parties be notified of discovery requests. *See In re Letters Rogatory from Tokyo District Prosecutor's Office*, 16 F.3d 1016 (9th Cir.1994).)

*Ex parte* Section 1782 discovery orders can result in unfairness. In *In re Letters Rogatory from Tokyo*, the party obtained an *ex parte* Section 1782 order, and did not notify

the other parties to the litigation, resulting in defective discovery, unfairness, and perhaps, irreparable damage to those other parties.

■ When the Court approves a Section 1782 discovery application, it has the authority to require that other parties in the foreign litigation be notified of the request in the same fashion as parties to litigation in federal court are entitled to such notice. This arises out of the explicit provision of the statute permitting the Court to order special practices and procedures, and because the Federal Rules of Civil Procedure normally requires the same. Therefore, nothing in Section 1782 prevents the Court in any given case from advancing the process by requiring the notification to take place at an earlier time in order to reduce disruption and conserve judicial resources.

■ Admittedly, the Court could simply issue an order that an applicant may serve deposition subpoenas on third parties with notice to opposing counsel in the foreign litigation as is proposed in the instant application. However, the Court would be derelict in its duty if it were not assured that the other parties had sufficient notice because of the long distance and short time present in this case. Therefore, in any case where the Court has such doubts or for other reasons, it has authority to simply require notification of other parties in the foreign litigation *prior* to the issuance of an order to a Section 1782(a) applicant for subpoenas.

■ In the instant case, petitioner Merck wants the Court to issue, *ex parte,* a Section 1782 discovery order which includes certain special practices and procedures. It claims that the other parties to the action in the United Kingdom do not oppose the application. However, those parties have not made a joint application. Nor does Merck represent that they consent to the application and proposed order. In fact, only yesterday, an attorney, identifying himself as representing an interested party in the United Kingdom action, requested that the Court permit time to file a response to the Section 1782 Application. This situation necessarily puts the Court in an awkward position inasmuch as no formal appearance has been made. Such

uncertainties are inherent to *ex parte* proceedings and demonstrate the dangers of last minute Section 1782 *ex parte* discovery applications. It is precisely these situations which cause the Court to look with askance and disfavor at *ex parte* applications.

The purported depositions are scheduled to begin in two business days. There is no assurance that the other party or parties could or should be prepared for depositions in such a short time. Granting an order under such circumstances invites upset, chaos, and ill-will. Nor is there any indication that because of some exigent circumstance discovery will be lost without an immediate Section 1782 order. Consequently, in this case, the Court elects to set a formal time for response to the Section 1782 application.

**IT IS THEREFORE ORDERED** that the Application by Merck & Co., Inc. pursuant to 28 U.S.C. § 1782 to issue two subpoenas *duces tecum* for Dr. Peter Schmidt and Mr. Robert Brown is stayed pending petitioner's notification of all interested parties in the United Kingdom litigation of the Application and this Order and of their right to file a formal response, if any, in this Court on or before March 9, 2000. Petitioner Merck shall also immediately submit an amendment to its application resetting the time for the depositions to a later date. Merck shall provide notice and copies of this order to the other parties in the United Kingdom action by telephone and fax, as well as by normal service procedures.

### AMENDED MARCH 27, 2000 ORDER

On March 3, 2000, this Court entered an order staying the Application by Merck & Co., Inc. ("Merck") for the issuance of two subpoenas pursuant to 28 U.S.C. § 1782. The subpoenas were sought for depositions to be used in a foreign action involving Collag Corp., Collag Ltd. (collectively, "Collag") and Merck. The stay was entered to allow other interested parties an opportunity to file a formal response. The Court received two responses.

Collag filed a response and supplemented it with the affidavit of its United Kingdom ("UK") solicitor, Alan Johnson. It does not

oppose the depositions of Dr. Schmidt and Mr. Brown under the Federal Rules of Civil Procedure, but requests that the procedures be altered by order of this Court to mimic as closely as possible those which would govern if the witnesses were giving evidence in a UK court. It points out that Section 1782(a) provides that in ordering discovery, "[t]he order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country."

In that regard, Collag points out that UK litigation procedure utilizes a summarization of witness statements, which represent evidence and obviate the need for lengthy direct examination in the UK court. Documents referred to in the witness summaries must be annexed. Collag requests that this procedure be imposed on Merck's deposition application and that prior to the depositions, Merck give full witness summaries in accordance with Rule 32.9 of the UK Civil Procedure Rules. Collag further requests the imposition of Rule 31.17 of the UK Civil Procedure Rules requiring document production from non-parties and/or the UK subpoena *ad testificandum* procedure whereby documents can also be obtained. Collag sets out a list of documents it would like this Court to order Novartis Crop Protection AG ("Novartis") to produce prior to the depositions, as a condition precedent to Merck's application being granted.[1]

With respect to the procedure for conducting the depositions, Collag requests that the UK practice be used whereby cross-examination is not limited to matters raised during the direct examination, that the direct examination of both witnesses by Merck take place followed by the cross-examination by Collag, and that there be a one day time gap between direct examination and cross-examination. Collag wants its UK counsel to be permitted to conduct the cross-examination. It does not object to both sound and video recording, nor to video conferencing of the depositions between the United States ("U.S.") and the UK, but requests that Merck pay the cost of any video conferencing. Last, Collag suggests that the confidentiality undertaking entered in the UK litigation be used for the depositions and also that Novartis be required to sign a confidentiality undertaking if it is shown confidential Collag documents.

Novartis, the employer of the two witnesses, also filed a response. It does not object, in principle, to the depositions of its two employees, Dr. Peter Schmidt and Mr. Robert Brown, but does object to several of the conditions sought to be imposed by Collag pursuant to Section 1782. Novartis' position is as follows, it: (1) requests that the Federal Rules of Civil Procedure be used and not the United Kingdom ("UK") Civil Procedure Rules because Novartis does not have UK counsel; (2) does not oppose both sound and video recording of the depositions; (3) does not object that UK evidentiary rules apply to the proceedings; (4) requests only one counsel per side conduct the examination and cross-examination of each witness; (5) does not object to Collag's request that direct examination of both witnesses take place before the cross-examination; (6) does not op-

---

1. After the filing of this Order on March 17, 2000, Novartis Crop Protection, Inc. filed a motion indicating that it is a Delaware corporation headquartered in Greensboro, North Carolina, and is wholly owned by Novartis Finance Corporation, a New York corporation. It claims Novartis Crop Protection AG is a Swiss corporation which allegedly does not do business in the United States and has no ownership interest, direct or indirect, in Novartis Crop Protection, Inc. Rather, Novartis AG is the ultimate parent holding company of the Novartis Group, including Novartis Crop Protection, Inc. and Novartis Crop Protection AG.

The role of these parties with respect to the UK litigation is not entirely clear, but this matter need not be ultimately resolved by the Court. It is clear that Dr. Schmidt and Mr. Brown are employees of at least Novartis Crop Protection, Inc. and that Merck intends to take their depositions as individuals, as opposed to Rule 30(b)(6) depositions of their employer. Likewise, with respect to the Court's decision that both Merck and Collag may obtain documents from Novartis, the Court directed that those documents be obtained pursuant to Fed.R.Civ.P. 45. This will require the parties to name a specific corporation. Both Merck and Collag are forewarned concerning the issues now raised by Novartis Crop Protection, Inc. to the effect that it has no connection with their controversy and Merck and Collag may wish to make additional inquiries before issuing any subpoenas.

pose video conference depositions; (7) agrees that there be a confidentiality order with respect to the depositions, but does not want to be shown confidential documents by Collag if it is required to sign a confidentiality restriction putting it at risk should it inadvertently make disclosures or make use of Collag's confidential information; and (8) agrees to produce documents which Collag seeks, but requests thirty days to produce them and desires protection if the production would be burdensome.

Merck, pursuant to the Court's direction, filed an Amended Application for discovery under 28 U.S.C. § 1782(a), and also replies to the responses of Collag and Novartis. The matter is ready for ruling.

### Discussion

Before resolving the dispute, the Court notes several general principles which will guide the decision. In rendering assistance to foreign litigation litigants, a U.S. court walks the line between assisting the foreign litigation without offending the foreign tribunal. In a case such as the instant one, where only private party litigants appear before this Court, the Court may have to exercise more caution to avoid affronting a foreign tribunal than if the discovery requests came from a government or the foreign tribunal itself. *John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 136 (3d Cir.1985).

In general, as a means of balancing the purported needs of the parties for discovery against the desire to avoid decisions offensive to a foreign tribunal, the courts have developed a number of factors for guiding the decision. First, the court may require the applicant to make a threshold showing that the discovery information would be discoverable in the foreign jurisdiction. This normally does not require the court to determine whether the evidence will be admissible. *In re Application of Asta Medica, S.A.*, 981 F.2d 1, 6 (1st Cir.1992); *Lo Ka Chun v. Lo To*, 858 F.2d 1564 (11th Cir.1988). The applicant has the burden of making this showing of discoverability. *In re Application of Asta Medica, S.A.*, 981 F.2d at 7. However, this does not mean that a U.S. court must make an extensive examination of foreign law or pretend to be an expert. *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir.1995). Rather, the court must keep in mind that the court's best guide may be to strive to achieve a basic sense of fairness and due process by utilizing its power to impose conditions on the discovery, and remembering that the foreign tribunal also can protect itself. *Id.* at 1101–02. For example, the U.S. court has an interest in making sure that one party to a foreign litigation is not using Section 1782(a) to gain an unfair advantage by conducting discovery of a U.S. party to the foreign litigation under Section 1782 and the liberal discovery procedures of the U.S. *In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the High Court of Justice, Chancery Division, England*, 147 F.R.D. 223 (C.D.Cal.1993).

In the instant case, the Court's task is relatively easy because the parties do not dispute that the information may be discoverable in some fashion in the UK litigation. And, because the information is sought from a non-party, it is not a situation where one party is attempting to obtain an unfair advantage over another party.

Utilizing the above principles, the Court will resolve the issues in the following manner. Because of greater familiarity with its own rules and procedures, the Court will first utilize them in order to be better able to provide even-handed enforcement than if it were trying to enforce unfamiliar foreign procedures. However, the Court will make accommodations to the special concerns of the foreign litigation—to the extent deemed practical and advisable. For example, it will order that certain foreign procedures be utilized, but leave ultimate enforcement to the foreign tribunal. The Court must also balance the interest of the non-party and any difficulty it may have in accommodating unfamiliar or burdensome foreign procedure.

First, Merck expresses concern as to some of the special UK practices proposed by Collag. Merck indicates that it will provide witness summaries, to the extent that it can, without further court order. However, Merck requests that compulsion of witness

summaries not be part of this Court's order because of the difficulty this Court would have in policing such a condition due to this Court's unfamiliarity with UK practice. It argues that a UK court necessarily will examine the summaries to determine whether they comport with UK law and that this Court should not become embroiled in such a controversy. The Court agrees with Merck's arguments. It will, however, direct that prior to the depositions, Merck provide Collag with witness summaries pursuant to UK law, if such would be required. But, this Court will not enforce further Merck's compliance with that part of the order and will leave such to the UK court should it deem it appropriate. This appears to be a workable compromise that satisfies the needs of the foreign litigation without improperly or impractically injecting this Court into that litigation.

Next, Merck does not object to Collag's request that there be a direct examination of both witnesses and then a one day gap between cross-examination. However, it points out that under UK law, in instances where there is an unwilling witness, said witness is brought before the Court with documents and cross-examination begins immediately after direct examination. Therefore, a gap between examinations is not an absolute under UK law. Merck is also concerned that time constraints, especially those of the non-party witnesses, might not permit a one day gap.

While Section 1782(a) does permit the Court to impose foreign procedures on discovery under that section, the balancing factors are expanded when a non-party is involved. The Court must take into account the burden to the non-party of imposing the foreign procedure on it. The Court concludes that the parties shall follow UK procedure to the extent possible, but because of concern for the Novartis employees' schedules, it may not be possible to give a one day gap between the direct and cross-examination. Therefore, the Court will not order that the break between examinations must be at least one day, but will grant a minimum period of four hours.

With respect to the documents requested by Collag, Merck notes that it has no control over Novartis' production, but does have a concern that Collag's request might interfere with the depositions if the request is too burdensome. The Court rejects Collag's proposal that Merck be required to alter its Fed.R.Civ.P. 45 subpoena to accommodate Collag's document requests even if that would be the procedure in the UK. Such procedure is unfamiliar to this Court and the Rule 45 subpoena process, and would make enforcement problematical and difficult. Under U.S. procedure, the request unnecessarily interjects Merck into a possible discovery dispute between Collag and Novartis. Collag would be dependent on Merck to enforce the subpoena in the face of any unwillingness by Novartis. The possibility of confusion and accusation is all but certain.

To obviate this possibility, the Court will direct Collag to serve a Rule 45 subpoena *duces tecum*, of its own, on Novartis for the pre-deposition delivery of the documents. This removes, at least initially, both the Court and Merck from endorsing Collag's requests for documents, and is desirable since neither have firm knowledge of the reasonableness of the requests. This procedure also eliminates any controversy between Merck and Collag as to when the documents should be produced. Now Collag can require the documents be produced at any reasonable time prior to the depositions. Moreover, it ensures that Collag will be responsible for the cost of production. This will help ensure that the document request will be reasonable. To the extent Collag may argue that Merck would be responsible for such costs in the UK, the Court directs Collag to make such application to the UK court.

Both Collag and Novartis want the Court to set a deposition date most convenient to them. Merck's position is that it wants to make sure that the depositions take place sufficiently in advance of the June 19, 2000 trial date in England so that it has time to prepare for the trial. The Court notes that Novartis would suggest the following days for the depositions, April 4 and 5, May 2, 3, 5, and 8, and May 24 and 25, 2000. Collag requests that the Court not schedule the

depositions before May 16, 2000 because of conflicting trial obligations of its UK counsel, James St. Ville.

The Court first requires all three parties to try and work out a compromise for the deposition dates. For example, if Novartis will produce all the documents sufficiently ahead of time for depositions in April or May, then perhaps Collag and Merck will make necessary accommodations. If Novartis needs more time to produce documents, then the depositions may have to occur later.[2]

Next, Merck and Novartis are especially concerned that Novartis not be required to submit to a confidentiality undertaking with respect to Collag documents unless Novartis agrees to do so. Merck points out that it knows of no authority which would require a non-party to review confidential documents under a confidentiality agreement, because this clearly puts an extra burden on the non-party which it otherwise would not have. The Court agrees and will not order that Novartis be required to review either Merck's or Collag's confidential documents under a confidentiality order.

In exception to Rule 30(e), and in conformance with UK procedure, Collag wants any changes in deposition testimony to be limited to errors in transcription. The Court disallows the request, but will make a slight accommodation, as set out below, to preserve the issue for the UK court. Unless stated otherwise, the depositions shall be conducted pursuant to the Federal Rules of Civil Procedure and this Court's Local Rules.

**IT IS THEREFORE ORDERED** that, pursuant to 28 U.S.C. § 1782(a), the Application of Merck & Co., Inc. to take the depositions of Novartis Crop Protection AG employees Dr. Peter Schmidt and Mr. Robert Brown in an action pending in the High Court of Justice, Chancery Division, Patents Court, entitled, *Collag Corp. and Collag, Ltd. v. Merck & Co., Inc.,* CH 1998 C No. 3129, is granted and the Court prescribes the following practice and procedure which will apply to said depositions.

(1) The depositions shall be conducted in accordance with the Federal Rules of Civil Procedure, except that in accordance with UK procedure, Merck shall give witness summaries, to the extent possible, of the witness' testimony to Collag in appropriate time prior to the depositions. The depositions shall proceed with the direct examination of both witnesses to occur and then the cross-examination. There shall be a gap of not less than four hours between the direct examination and cross-examination. The scope of cross-examination is not limited by the subject of the direct examination. In addition to stenographic deposition, a video deposition may be taken. Any party selecting video conference deposition pays for that cost, except if both parties elect video conference depositions, they shall cooperate to reduce costs and share the cost of a video conference deposition.

(2) Both Merck and Collag may obtain documents from Novartis. The documents shall be obtained in accordance with Fed. R.Civ.P. 45. Should Collag wish documents, it is responsible for timely and promptly issuing its own Rule 45 subpoena *duces tecum* for pre-deposition production of documents.

(3) Only one attorney for each side may conduct the deposition of each witness. The permitted examining attorneys include both the U.S. and UK counsel for both Merck and Collag.

(4) The form of the confidentiality undertaking in the UK litigation shall apply to the depositions of the Novartis witnesses, unless the parties to the UK litigation and Novartis agree to another form of confidentiality agreement. Novartis and its witnesses are not required to sign any confidentiality undertaking.

(5) The witnesses are permitted to review their transcripts and make changes pursuant to Fed.R.Civ.P. 30(e), but shall note if the changes result from an error in transcription, and the Court specifically leaves to the UK

2. The Court notes that Novartis is not a completely uninvolved non-party. It allegedly was given Collag's secret information by Merck and

has utilized the same. Thus, the Court will not hesitate to demand that Novartis undergo some burden in submitting to the depositions.

court whether any other changes will be recognized.

(6) The Court sets a tentative deposition time during the month of May 2000, unless the parties otherwise agree. Counsel for all interested parties are directed to immediately confer and agree on a date within twenty days of the date of this Order, and failing to come to agreement, shall submit their positions to the Court for its decision.