Guy v. Starwood Hotels, et al.      CV-03-183-JD  01/06/05

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Leo Guy d/b/a LTL Liquidators

          v.                        Civil No. 03-183-JD
                                    Opinion No. 2005 DNH 004
Starwood Hotels & Resorts
Worldwide, Inc. *et al.*


O R D E R


Defendant Rhode Island Convention Center Authority ("the CCA") moves to dismiss Leo Guy's complaint against it on the basis of lack of personal jurisdiction. Guy objects. The other defendants, Starwood Hotels & Resorts Worldwide, Inc. and Westin Management Company North, have not responded to the motion.


Standard of Review

The plaintiff bears the burden of establishing personal jurisdiction over a defendant. Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 7 (1st Cir. 2002). When, as here, jurisdictional issues are raised in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff may establish personal jurisdiction through a prima facie showing. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002). The court "'accept[s] the plaintiff's (properly documented) evidentiary proffers as true

for the purpose of determining the adequacy of the prima facie jurisdictional showing,'" construing them in the light most favorable to jurisdiction.  Id. (quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)).  Any facts proffered by the defendant are also considered, but only to the extent they are not disputed by the plaintiff's properly documented facts.  Id.

Here, the CCA relies primarily on the allegations of Guy's amended complaint, but has also augmented its motion with an affidavit from its executive director and an excerpt from Guy's deposition testimony in this case.  Guy's objection does not incorporate any evidentiary materials or otherwise dispute the jurisdictional facts set forth by the CCA.  Accordingly, the court will accept the CCA's version of those facts as true, construing them in the light most favorable to jurisdiction.

## Background

Guy buys and sells hotel furnishings under the name LTL Liquidators, which has its office in Portsmouth, New Hampshire. Acting on a tip from a business associate that the Westin Hotel in Providence, Rhode Island, was selling its furniture, Guy left a telephone message for Harry Jones, Westin's director of engineering, in October 2002, inquiring about the sale.  Jones

2

called Guy back at his office and confirmed that Westin was renovating the property, so Guy made an appointment with Jones to visit the hotel for the purpose of preparing a bid for its furnishings. Following the visit, Guy submitted a bid to buy the furniture of all 356 of the rooms in the hotel for a certain price per room. He learned the bid had been accepted through a telephone call from Jones's secretary. Westin confirmed the acceptance through a facsimile to Guy.

In a conversation with Guy that same day, Jones indicated that Westin wanted to donate fifty rooms' worth of furniture to charity, rather than selling them to Guy. The men therefore modified the agreement to that effect, stipulating that "the donation furniture would be left to the end of the project." The agreement also provided that Guy would acquire the furniture in installments, with the first three floors' worth to be taken in late November 2002, and the next three floors' worth to be taken three weeks later.

After Guy had paid for and removed the first three floors' worth of furniture, however, Jones called to tell him that the next three floors could not be cleared on schedule due to delays in the renovation and that he would receive word after the holidays on a new date the furniture could be taken. Westin continually postponed that date through January and February, but

3

eventually Jones's secretary called Guy to tell him he could take the furniture beginning on March 12, 2003.  On March 11, 2003, however, Jones called Guy to tell him that the hotel's owner had decided to donate all the remaining furnishings to charity.  Although those furnishings totaled some 252 rooms' worth, Jones threatened to give Guy a "'bad name' at all of the Starwood Hotels if [Guy] gave him any trouble" and refused Guy's request to provide written confirmation of the decision.

Guy subsequently commenced this action for breach of contract against Starwood, Westin's parent company.  After Guy learned through discovery that the CCA actually owned the hotel and its furnishings and that Jones was therefore acting as the CCA's agent during their dealings, he filed an amended complaint adding the CCA as a defendant.[1]  The CCA is a public authority with its principal place of business in Providence.  Its executive director, James P. McCarvill, attests that the CCA has never been "qualified or registered to do business," maintained an office or mailing address, held an interest in any real or personal property, or conducted any marketing activity in New Hampshire.  He also states that, to the best of his knowledge, the CCA "has had no agents acting on its behalf" here.  For

---

[1]The amended complaint also added Westin as a defendant.

4

purposes of its motion, however, the CCA does not dispute that Jones was acting as its agent during his dealings with Guy.

## Discussion

Guy argues that this court has jurisdiction over the CCA as a result of the actions of its agents, Westin and Jones, in transacting business in New Hampshire within the meaning of the state long-arm statute.[2]  Beyond his bare assertion that "[t]his conduct meets the two party [sic] test" for personal jurisdiction, however, Guy does not bother to address whether exercising jurisdiction would comport with constitutional requirements of due process.  This is a significant omission, given that the New Hampshire long-arm statute merely authorizes jurisdiction to the extent due process allows.  Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 287 (1st Cir. 1999); Sawtelle v. Farrell, 70 F.3d 1381, 1388 (1st Cir. 1995).

Here, due process requires that the CCA have "'certain minimum contacts' with New Hampshire 'such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  Jet Wine & Spirits, 298 F.3d at 7

---

[2]The actions of a corporation's agents are imputed to it for purposes of the jurisdictional inquiry.  Jet Wine & Spirits, 298 F.3d at 7-8; United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1090 (1st Cir. 1992).

5

(quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) (further internal quotation marks omitted).  Personal jurisdiction may be general or specific, depending on the nature of the defendant's contacts with the forum.[3]  E.g., Daynard, 290 F.3d at 51; Foster-Miller, 46 F.3d at 144.  Whether the exercise of specific jurisdiction meets constitutional standards depends on three factors:  relatedness, purposeful availment, and reasonableness.  Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 35 (1st Cir. 1998); United Elec., Radio & Mach. Workers, 960 F.2d at 1089.  The court will address each of these factors in turn.

"Questions of specific jurisdiction are always tied to the particular claims asserted," i.e., tort or contract.  Phillips, 196 F.3d at 289; see also Mass. Sch. of Law, 142 F.3d at 35. For the latter kind of claims, the Supreme Court has advocated a "'highly realistic' approach . . . that a 'contract' is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves

---

[3]Guy does not appear to contend that the court has general jurisdiction over the CCA.  In any event, it is clear from the undisputed facts set forth in McCarvill's affidavit that the CCA has avoided the "systematic and continuous linkage" with New Hampshire necessary to give rise to general jurisdiction here. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984).

6

are the real object of the business transaction."  Burger King

Corp. v. Rudzewicz, 471 U.S. 462, 479 (1985) (quoting Hoopeston

Canning Co. v. Cullen, 318 U.S. 313, 316-17 (1943)).  "It is

these factors--prior negotiations and contemplated future

consequences, along with the terms of the contract and the

parties' actual course of dealing--that must be evaluated in

determining whether the defendant purposefully established

minimum contacts within the forum."  Id.  The First Circuit has

interpreted this mandate to allow the plaintiff to prove

jurisdiction by "show[ing], for example, that 'the defendant's

contacts with the forum were instrumental either in the formation

of the contract or in its breach.'"  Jet Wine & Spirits, 298 F.3d

at 7 (quoting Phillips, 196 F.3d at 289)).

During the discussions preceding the formation of the

contract at issue here, the CCA's agents made contacts with New

Hampshire in the form of Jones's telephone conversations with

Guy, sandwiched around the telephone call from Jones's secretary

and subsequent fax from Westin confirming that Guy's bid had been

accepted.  "[P]articipating in significant negotiations within

the forum state anent important contract terms can constitute

'minimum contacts' with the state for purposes of a subsequent

claim asserting breach of that contract."  United Elec., Radio &

Mach. Workers, 960 F.2d at 1090 (citing cases).  This theory

7

fails to establish jurisdiction in this case, however, because the "significant negotiations" underlying the contract for sale of the furniture took place in Rhode Island during Guy's visit.

Indeed, Guy testified in his deposition that he and Jones discussed little in their initial phone call, "[j]ust that [the defendants] were in fact doing a renovation and that [Guy] needed to make an appointment with [Jones] to go down and look at the property." The schedule on which Guy was to retrieve the furnishings was not discussed until the visit itself, and Guy did not offer a purchase price until after the visit. Furthermore, apart from Guy's acceptance of Jones's subsequent proposal to eliminate fifty rooms' worth of furniture from the deal, the only "negotiations" which occurred after Guy returned to New Hampshire consisted of two presumably brief communications from the defendants indicating that they had accepted Guy's bid. The defendants' contacts with New Hampshire were therefore not "instrumental" to the formation of the disputed contract so as to give rise to jurisdiction here. See id. ("If the negotiations occurred outside the forum state, their existence cannot serve to bolster the argument for . . . jurisdiction in the forum.")

The defendants' contacts with New Hampshire also were not instrumental in the claimed breach of their contract with Guy. Although Jones allegedly informed Guy of Westin's intention to

8

dishonor their agreement over the telephone, the First Circuit has indicated that "a contract arguably is breached where a promisor fails to perform." Phillips, 196 F.3d at 291. Here, the entirety of the contract was to be performed in Rhode Island, where the defendants were to make the furniture available to Guy and he was to submit payment for it. None of the CCA's contacts with New Hampshire through Jones, then, was instrumental to the alleged breach of contract. Cf. Burger King, 471 U.S. at 480 (relying on fact that payments directed to forum state to support jurisdiction); Jet Wine & Spirits, 298 F.3d at 10 (considering letter defendant's agent sent to plaintiff in forum state to terminate distributorship agreement as contact supporting jurisdiction when distributorship rights covered forum state). Accordingly, the court concludes that the relatedness factor weighs against the exercise of jurisdiction here. See Phillips, 196 F.3d at 289; PFIP, LLC v. Planet Fitness Enters., Inc., 2004 DNH 159, 2004 WL 2538489, at *6 (D.N.H. Nov. 10, 2004).

The court now turns to the purposeful availment test. "'The cornerstones upon which the concept of purposeful availment rests are voluntariness and foreseeability.'" Daynard, 290 F.3d at 61 (quoting Sawtelle, 70 F.3d at 1391). Thus, in considering this factor in contract cases, the First Circuit has focused on whether "the defendant actually reached out to the plaintiff's

9

state of residence to <u>create</u> a relationship . . . ." <u>Phillips</u>, 196 F.3d at 292; <u>see also</u> <u>Daynard</u>, 290 F.3d at 62. The CCA correctly points out that it did no such thing; in fact, it was Guy who reached out to Jones and his principals in Rhode Island. <u>Cf.</u> <u>Hahn v. Vt. Law Sch.</u>, 698 F.2d 48, 51-52 (1st Cir. 1983) (finding jurisdiction where defendant sent materials to forum state soliciting application from plaintiff).

Furthermore, the agreement at issue contemplated Guy's removal of furniture from the hotel over a relatively short period of time, rather than any "ongoing relationship" between the parties. <u>Cf.</u> <u>Jet Wine & Spirits</u>, 298 F.3d at 11; <u>Daynard</u>, 290 F.3d at 61. The absence of a "continuing obligation" between the CCA and New Hampshire indicates that the CCA could not have reasonably foreseen being haled into this court as a result of its dealings with Guy. <u>See</u> <u>Sawtelle</u>, 70 F.3d at 1393-94. The court concludes that the purposeful availment factor also fails to support jurisdiction here. <u>See</u> <u>PFIP</u>, 2004 WL 2538489, at *7.

Because the court has determined that Guy has failed to show that exercising jurisdiction over Guy passes either the relatedness or purposeful availment tests, the reasonableness factor need not be considered. <u>United Elec., Radio & Mach. Workers</u>, 960 F.2d at 1091 n.11. Indeed, "the mere existence of a contractual relationship between an out-of-state defendant and an

10

in-state plaintiff does not suffice, in and of itself, to establish jurisdiction in the plaintiff's home state." Phillips, 196 F.3d at 290 (citing Burger King, 471 U.S. at 478-79). Guy's argument for jurisdiction over the CCA appears to rely solely on this untenable theory. Accordingly, the court grants the CCA's motion to dismiss for lack of personal jurisdiction.

## Conclusion

For the foregoing reasons, the CCA's motion to dismiss for lack of personal jurisdiction (document no. 18) is GRANTED.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

January 6, 2005

cc:  Michael J. Connolly, Esquire
     Paul McEachern, Esquire
     Courtney Worcester, Esquire

11