20-2653-cv
*The Application of the Fund v. AlixPartners*

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2020

No. 20-2653-cv

THE APPLICATION OF THE FUND FOR PROTECTION OF INVESTOR RIGHTS
IN FOREIGN STATES PURSUANT TO 28 U.S.C. § 1782 FOR AN ORDER
GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN A FOREIGN
PROCEEDING,
*Plaintiff-Appellee*,

v.

ALIXPARTNERS, LLP, SIMON FREAKLEY,
*Third-Party Defendants-Appellants*.

On Appeal from the United States District Court
for the Southern District of New York

ARGUED: APRIL 15, 2021
DECIDED: JULY 15, 2021

Before: CABRANES, POOLER, and BIANCO, *Circuit Judges*.

Third-Party Defendants-Appellants AlixPartners, LLP and Simon Freakley (together, "AlixPartners") appeal from the July 8, 2020 Order of the United States District Court for the Southern District of New York (Analisa Torres, *Judge*) granting an application for discovery assistance pursuant to 28 U.S.C. § 1782 and the August 25, 2020 Order denying reconsideration of the same. Under § 1782(a), a district court may grant an application for discovery assistance submitted by an "interested person" for use "in a proceeding in a foreign or international tribunal." Plaintiff-Appellee The Fund for Protection of Investor Rights in Foreign States (the "Fund"), a Russian corporation, sought assistance from the District Court to order discovery from AlixPartners for use in an arbitration proceeding brought by the Fund against Lithuania before an arbitral panel established pursuant to a bilateral investment treaty between Lithuania and Russia.

This case presents three main issues on appeal: (1) whether an arbitration between a foreign State and an investor, which takes place before an arbitral panel established pursuant to a bilateral investment treaty to which the foreign State is a party, constitutes a "proceeding in a foreign or international tribunal" under 28 U.S.C. § 1782; (2) whether the Fund is an "interested person" who may seek discovery assistance for such an arbitration under § 1782; and (3) whether the District Court erred in finding that the so-called *Intel* factors weigh in favor of granting the Fund's discovery application under § 1782. As to the first question presented, because the arbitration is between an investor and a foreign State party to a bilateral investment treaty, taking place before an arbitral panel established by that treaty, we hold that this arbitration is a "proceeding in a foreign or international tribunal." Second, because the Fund is a party to the arbitration for which it seeks discovery assistance, it is an "interested person" under § 1782. Third, we find no abuse of discretion in the District Court's

3

determination that the *Intel* factors weigh in favor of granting the Fund's discovery application. Accordingly, we AFFIRM the July 8, 2020 Order and the August 25, 2020 Order of the District Court.

---

JOSEPH T. BAIO, Willkie Farr & Gallagher LLP, New York, NY, *for Third-Party Defendants-Appellants*.

ALEXANDER A. YANOS (Carlos Ramos-Mrosovsky, Rajat Rana, Robert Poole, *on the brief*), Alston & Bird LLP, New York, NY, *for Plaintiff-Appellee.*

---

JOSÉ A. CABRANES, *Circuit Judge*:

We consider here three questions concerning discovery in U.S. courts to assist in an arbitration between an investor and a foreign State that takes place before an arbitral panel established by a bilateral investment treaty to which that foreign State is a party.

4

Appellants AlixPartners, LLP and Simon Freakley (together, "AlixPartners") appeal from the July 8, 2020 Order of the United States District Court for the Southern District of New York (Analisa Torres, *Judge*) granting an application for discovery assistance pursuant to 28 U.S.C. § 1782, along with the District Court's August 25, 2020 Order denying reconsideration of the same.[1] Under § 1782(a), a district court may grant an application for discovery assistance submitted by an "interested person" for use "in a proceeding in a foreign or international tribunal." Appellee The Fund for Protection of Investor Rights in Foreign States (the "Fund"), a Russian corporation, sought assistance from the District Court to order discovery from Freakley and AlixPartners, LLP, a limited liability partnership with its principal place of business in New York, for use in an arbitration proceeding

---

[1] *In re Fund for Protection of Inv. Rights in Foreign States*, No. 19 Misc. 401 (AT), 2020 WL 3833457 (S.D.N.Y. July 8, 2020). AlixPartners also appeals from the August 25, 2020 order denying reconsideration. *In re Fund for Protection of Inv. Rights in Foreign States*, No. 19 Misc. 401 (AT), 2020 WL 5026586 (S.D.N.Y. Aug. 25, 2020).

brought by the Fund against the Republic of Lithuania ("Lithuania")[2]; that proceeding was before an arbitral panel established by a bilateral investment treaty between Lithuania and the Russian Federation ("Russia").

This case presents three primary issues on appeal: (1) whether an arbitration between a foreign State and an investor, which takes place before an arbitral panel established pursuant to a bilateral investment treaty to which that foreign State is a party, constitutes a "proceeding in a foreign or international tribunal" under § 1782; (2) whether the Fund qualifies as an "interested person" who may seek discovery assistance under § 1782; and (3) whether the District Court erred in finding that the so-called *Intel* factors[3] weigh in favor of granting the Fund's discovery application.

---

[2] Ex Parte Application of The Fund at 1, *In re the Application of the Fund for Protection of Investor Rights in Foreign States*, No. 1:19-mc-00401-AT (S.D.N.Y. Aug. 29, 2019), ECF No. 1.

[3] *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) (*Intel*).

As to the first question presented, because the arbitration is between an investor and foreign State party to a bilateral investment treaty, and because the arbitration takes place before an arbitral panel established by that same treaty, we hold that this arbitration is a "proceeding in a foreign or international tribunal." Second, because the Fund is a party to the arbitration for which it is seeking discovery assistance, it qualifies as an "interested person" under § 1782. Third, we find no abuse of discretion in the District Court's determination that the relevant factors announced by the Supreme Court in *Intel* weigh in favor of granting the Fund's discovery application. Accordingly, we **AFFIRM** the July 8, 2020 Order and the August 25, 2020 Order of the District Court.

## BACKGROUND

In 2011, Lithuania's regulatory authorities conducted an investigation of a private bank located in Lithuania, AB bankas SNORAS ("Snoras"). After finding that Snoras was unable to meet its

obligations, the Bank of Lithuania, the central bank, nationalized Snoras and appointed Simon Freakley as its temporary administrator. As administrator, Freakley reported to the Bank of Lithuania that Snoras's liabilities exceeded its assets and shortly thereafter, the authorities commenced bankruptcy proceedings, which resulted in a Lithuanian court declaring Snoras to be bankrupt.

The Fund, a Russian corporation, is the assignee of Vladimir Antonov, a Russian national who sought to recover compensation for Lithuania's expropriation of his controlling share in Snoras by commencing an arbitration proceeding against Lithuania in April 2019. The Fund commenced this particular arbitration pursuant to a bilateral investment treaty to which Lithuania and Russia are parties, titled the Agreement Between the Government of the Russian Federation and the Government of the Republic of Lithuania on the Promotion and Reciprocal Protection of the Investments (the "Treaty"). This Treaty is, according to its terms, an agreement entered

8

for the purpose of establishing favorable conditions made by investors of one foreign State in the territory of the other, "recognising that the promotion and reciprocal protection of investments, based on the present Agreement, will be conducive to the development of mutually beneficial trade and economic, scientific and technical co-operation."[4]

There are several provisions in the Treaty that are relevant to this appeal. Article 6 of the Treaty provides that investments of one foreign State's nationals made in the territory of the other State "shall not be subject to expropriation, nationalisation or other measures equivalent to expropriation or nationalisation."[5]

Article 10 addresses the procedures by which disputes between one foreign State and an investor of the other State are resolved. In the

---

[4] Joint App'x 70.

[5] *Id.* at 72.

event that a dispute cannot be settled within six months, either party may elect to submit the dispute to one of four venues:

> a) competent court or court of arbitration of the Contracting Party in which territory the investments are made;
>
> b) the Arbitration Institute of the Stockholm Chamber of Commerce;
>
> c) the Court of Arbitration of the International Chamber of Commerce; [or]
>
> d) an ad hoc arbitration in accordance with Arbitration Rules of the United Nations Commission on International Trade Law (UNCITRAL).[6]

The Treaty also provides that "[t]he arbitral decision shall be final and binding on both parties [to] the dispute."[7]

When the Fund initiated an arbitration pursuant to the Treaty, it elected to resolve the dispute through "an ad hoc arbitration in

---

[6] *Id.* at 74.

[7] *Id.*

10

accordance with Arbitration Rules of [UNCITRAL.]"[8] In August 2019,

the Fund filed an application pursuant to 28 U.S.C. § 1782[9] in the

United States District Court for the Southern District of New York for

---

[8] *Id*. at 29.

[9] The relevant language of § 1782 is as follows:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made pursuant to a letter rogatory issued, or request made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. . . . The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. . . . A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782(a).

11

an order granting the Fund leave to obtain discovery for use in its arbitration with Lithuania.[10]

In its application the Fund sought discovery from Freakley and AlixPartners, LLP[11] related to the expropriation of Snoras based on Freakley's role as the bank's temporary administrator, including information about: the circumstances of Freakley's appointment as Snoras's temporary administrator; any instructions Freakley received from the Lithuanian government; the nature, scope, and findings of Freakley's investigation at Snoras; the "reception" by Lithuanian officials of those findings; any reports prepared by Freakley for the Bank of Lithuania; and a deposition of Freakley and a representative of AlixPartners, LLP about these events. AlixPartners filed a response

---

[10] The Fund filed this § 1782 application in the Southern District of New York because it is the "district court of the district in which [AlixPartners and Freakley] reside[ ] or [are] found." 28 U.S.C. § 1782(a).

[11] Freakley is currently the Chief Executive Officer of AlixPartners, LLP. At the time the Bank of Lithuania appointed Freakley as temporary administrator of Snoras, Freakley worked for a different entity whose assets were later acquired by AlixPartners, LLP. Appellants Br. 6.

in the District Court in opposition to the Fund's § 1782 application in October 2019.

In November 2019, Lithuania submitted a letter to the arbitral panel constituted pursuant to the Treaty to arbitrate the dispute between the Fund and Lithuania, in which Lithuania asked the panel "to order the [Fund] to withdraw the [§] 1782 Application" and which the Fund opposed.[12] The arbitral panel issued an order the next month, analyzing the parties' positions and ultimately rejecting Lithuania's request to order the Fund to withdraw its § 1782 application. In its decision, the panel observed that Lithuania did not show that the § 1782 application "would in itself be prejudicial to its rights in this arbitration" and noted that Lithuania would "be able to contest any evidence that might be obtained pursuant to the [Fund's §] 1782 Application, if granted," including objections as to admissibility of

---

[12] Joint App'x 216.

materials under Lithuanian law.[13] The arbitral panel declined to decide

such possible admissibility issues in its order, finding that "[i]t would

be premature to do so."[14]

Back in the United States, on July 8, 2020 the District Court

granted the Fund's § 1782 application and authorized the Fund to issue

subpoenas to AlixPartners for the requested documents.[15]

That same day, we held in *Guo* that § 1782 discovery assistance

does not extend to private commercial arbitrations,[16] a decision that

reaffirmed our prior holding in *NBC*.[17] In *Guo*, we also offered further

guidance on the factors to be considered by a court in deciding

---

[13] *Id.* at 219–20.

[14] *Id.* at 220.

[15] *In re Fund for Protection of Inv. Rights in Foreign States*, 2020 WL 3833457.

[16] *See In re Guo (Guo)*, 965 F.3d 96 (2d Cir. 2020).

[17] *Id.* at 104-05; *see Nat'l Broad. Co. v. Bear Stearns & Co. (NBC)*, 165 F.3d 184 (2d Cir. 1999).

whether an arbitration is taking place in a "foreign or international tribunal" under § 1782.[18]

AlixPartners timely moved for reconsideration of the District Court's July 8 Order, asserting that the decision could not stand in light of *Guo*'s holding that an arbitral tribunal's status turns not on its origins in governmental action, but instead on whether the tribunal possesses the functional attributes most commonly associated with private arbitration.

On August 25, 2020, the District Court denied the motion for reconsideration, interpreting *Guo* as "suggest[ing] that arbitrations conducted pursuant to a bilateral investment treaty like the [Treaty here] do qualify as '[proceedings in a] foreign or international tribunal' under § 1782."[19] The District Court also explained that it had,

---

[18] *See Guo*, 965 F.3d at 107.

[19] *In re Fund for Protection of Inv. Rights in Foreign States*, 2020 WL 5026586, at *2 (quoting § 1782).

15

consistent with *Guo*, reached its prior decision by looking to several functional attributes possessed by the arbitral panel that were *not* commonly associated with private arbitration, including:

> the role of bilateral investment arbitration as a tool of international relations, the fact that the Tribunal derives its jurisdiction from the [Treaty], and the fact that the Arbitration is a means by which [the Fund is] bringing claims against the Republic of Lithuania in its capacity as a state.[20]

Thus, according to the District Court, its July 8 Order was not disturbed by this Court's decision in *Guo*. This timely appeal followed.

## DISCUSSION

Under 28 U.S.C. § 1782(a), a district court may compel the production of materials "for use in a proceeding in a foreign or international tribunal" upon "the application of any interested

---

[20] *Id*.

16

person." There are several statutory requirements that must be satisfied for § 1782 discovery assistance to be granted:

> (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by a foreign or international tribunal or any interested person.[21]

The issues on appeal are: (1) whether an arbitration between an investor and a foreign State, which takes place before an arbitral panel established by a bilateral investment treaty to which that foreign State is a party, constitutes a "proceeding in a foreign or international tribunal" under § 1782; (2) whether the Fund qualifies as an "interested person" who may seek discovery assistance for such an arbitration under § 1782; and (3) whether the District Court "abused

---

[21] *Brandi–Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012); *see also Guo*, 965 F.3d at 102 n.3 ("[T]he statute also imposes other requirements, including that the discovery not be 'in violation of any legally applicable privilege.'" (quoting 28 U.S.C. § 1782(a))). AlixPartners does not contest that the first § 1782 requirement, that it can be "found" in the Southern District of New York, is satisfied.

its discretion"[22] in granting discovery to the Fund after weighing the so-called *Intel* factors.

We review *de novo* the District Court's conclusions that this arbitration is a proceeding before an arbitral panel that qualifies as a "foreign or international tribunal" and the Fund is an "interested person."[23] We review the District Court's application of the so-called *Intel* factors and its decision to order discovery for abuse of discretion.[24]

---

[22] *See In re The City of New York*, 607 F.3d 923, 943 n.21 (2d Cir. 2010) (explaining that "[t]he word 'abuse' in the 'abuse of discretion' standard is an unfortunate—and inaccurate—term of art. When a district court abuses its discretion, it involves nothing as heinous as *abuse*. Indeed, a so-called abuse of discretion often involves something quite common and unavoidable in a system of adjudication: a 'view of the law' that is simply 'erroneous.'" (quoting *Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008)).

[23] *Guo*, 965 F.3d at 102.

[24] *See Lancaster Factoring Co. v. Mangone*, 90 F.3d 38, 42 (2d Cir. 1996).

I.

Pursuant to the Treaty between Lithuania and Russia, the Fund initiated an arbitration against Lithuania to challenge the expropriation of certain shares of the bank Snoras. In opposition to the Fund's application for discovery assistance, AlixPartners asserts that the arbitration between the Fund and Lithuania is a private commercial arbitration, rather than a "proceeding in a foreign or international tribunal" within the meaning of § 1782.

The seminal Supreme Court case in this area, *Intel*, approached the "foreign or international tribunal" statutory requirement of § 1782 cautiously and flexibly. The Court held that discovery assistance would be used "in a proceeding in a foreign or international tribunal" where a foreign government entity—there, the Directorate General-Competition of the Commission of the European Communities, whose determinations were appealable to the European Court of Justice—exercised "quasi-judicial" powers and acted as a "first-instance

19

decisionmaker."[25] The *Intel* Court also noted that a proceeding abroad may be eligible for § 1782 discovery assistance even when it has no analogous forum in the United States. This was so because, "[i]n light of the variety of foreign proceedings resistant to ready classification in domestic terms, Congress left unbounded by categorical rules the determination whether a matter is proceeding 'in a foreign or international tribunal.'"[26] Thus, the *Intel* Court resisted setting firm limits on the arbitral bodies that could qualify for § 1782 discovery assistance as "foreign or international tribunal[s]." Instead, the Court offered the *Intel* factors, discussed below, as "guides for the exercise of district-court discretion."[27]

---

[25] *Intel*, 542 U.S. at 252, 257–58. The term "court of first instance" is often referred to as a "trial court," defined as "[a] court of original jurisdiction where evidence is first received and considered"; "[a]lso termed *court of first instance*[.]" *Trial court*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[26] *Intel*, 542 U.S. at 263 n.15 (quoting 28 U.S.C. § 1782(a)).

[27] *Id.*

Our own precedents have likewise made it clear that this statutory requirement of § 1782 is broad, but not boundless. In *NBC*, we held that "when Congress in 1964 enacted the modern version of § 1782, it intended to cover governmental or intergovernmental arbitral tribunals and conventional courts and other state-sponsored adjudicatory bodies."[28] That said, we also held "international arbitral panels created exclusively by private parties" or "arbitral bod[ies] established by private parties" were not "foreign or international tribunals" for the purposes of § 1782.[29]

In our recent decision in *Guo*, we re-affirmed *NBC*'s holding and elaborated on the framework by which a court should determine whether a "foreign or international tribunal" exists for purposes of § 1782. In that case, we determined that, although the administrative entity at issue—the China International Economic and Trade

---

[28] *NBC*, 165 F.3d at 190.

[29] *Id.* at 190–91.

Arbitration Commission ("CIETAC")—"was originally created through state action," the entity had "subsequently evolved such that it arguably no longer qualifie[d] as a 'governmental or intergovernmental arbitral tribunal[,] . . . conventional court[, or] . . . other state-sponsored adjudicatory body."[30] Accordingly, we specified factors to be considered by courts when conducting the "foreign or international tribunal" inquiry, emphasizing that this inquiry "does not turn on the governmental or nongovernmental *origins* of the administrative entity in question."[31] Instead, we adopted a "functional approach" that "consider[s] a range of factors" to answer a key question: "whether the body in question possesses the functional attributes most commonly associated with private arbitration."[32]

---

[30] *Guo*, 965 F.3d at 107 (quoting *NBC*, 165 F.3d at 190).

[31] *Id.* (emphasis in original).

[32] *Id.* As we discuss in more detail below, in *Guo* we noted certain distinctions between the body at issue in *Guo*—CIETAC—and an arbitral panel of the kind we consider in this case. Indeed, we noted that "arbitration under bilateral investment treaties is typically between a private party and a state" whereas "the

In this case, the parties dispute whether this arbitral panel is a private commercial arbitration. Because *Guo* clarified that the "foreign or international tribunal" inquiry does not turn on the governmental origins of the entity in question, we analyze this question under the "functional approach" and factors we laid out in *Guo*,[33] including:

(1) the "degree of state affiliation and functional independence possessed by the entity";

dispute [there was] between two private parties." *Id*. at 108 n.7. We also noted that "[w]hile an arbitral body under a bilateral investment treaty may be a 'foreign or international tribunal,' the arbitration [before CIETAC] derive[d] adjudicatory authority solely from the parties' agreement, rather than the intervention or license of any government to adjudicate cases arising from certain varieties of foreign investment." *Id*.

[33] The Fund argues that we should not consider the *Guo* factors in this case because *Guo* concerned a tribunal "founded on a private contractual agreement," as opposed to an arbitration involving a foreign State before an arbitral panel established pursuant to a bilateral investment treaty to which that State is a party. Appellee Br. 20. We disagree. In *Guo*, we stated that "[a] closer inquiry is required where . . . the arbitral body was originally created through state action, yet subsequently evolved such that it arguably no longer qualifies as a [foreign or international tribunal]." *Guo*, 965 F.3d at 107. We likewise think that a closer inquiry is required where the arbitral body arguably possesses attributes of both private and governmental arbitration. Our holding in *Guo* that the inquiry "does not turn on the governmental or nongovernmental *origins* of the administrative entity in question," *id*., reinforces our decision to undertake that inquiry here.

(2) the "degree to which a state possesses the authority to intervene to alter the outcome of an arbitration after the panel has rendered a decision";

(3) the "nature of the jurisdiction possessed by the panel"; and

(4) the "ability of the parties to select their own arbitrators."[34]

We consider each of these factors in turn.

*1.  State Affiliation and Functional Independence.*

In looking at the "extent to which the arbitral body is internally directed and governed by a foreign state or intergovernmental body,"[35] we recall that we found that the arbitral body in *Guo*,

---

[34] *Guo*, 965 F.3d at 107–08.

[35] *Id*. at 107. We consider also any additional "functional attributes" that may suggest that the arbitral tribunal is a "private arbitral body rather than a 'foreign or international tribunal.'" *Id*. at 107-08.

24

CIETAC, "function[ed] essentially independently of the Chinese government in the 'administration of its arbitration cases'"; the administrative entity "maintain[ed] confidentiality from all non-participants during and after arbitration, limiting opportunities for *ex parte* intervention by state officials"; and that CIETAC offered a pool of arbitrators with no affiliation with the Chinese government.[36] We thus held that CIETAC had a "high degree of independence and autonomy, and, conversely, a low degree of state affiliation."[37]

Here, the arbitral panel also functions independently from the governments of Lithuania and Russia. The members of the arbitral panel (two arbitration lawyers and a law professor) have no official affiliation with Lithuania, Russia, or any other governmental or intergovernmental entity and the panel receives zero government funding. Further, as was the case with proceedings before CIETAC,

[36] *Id*. at 107.

[37] *Id.*

the proceedings here maintain confidentiality from non-participants; the Treaty provides that "[t]he award may be made public only with the consent of both parties."[38]

Nevertheless, we agree with the Fund that this functional independence of the arbitral panel must be viewed within the context of the Treaty. It is true that this arbitral panel is not internally "directed and governed by a foreign state."[39] But the panel is convened and proceeds in an arbitration format expressly contemplated by the Treaty entered into by Lithuania and Russia in order to create a specific proceeding to resolve investment-related disputes between one foreign State and investors of the other State. And the rules that will govern the dispute were developed by UNCITRAL, an international body.[40] We conclude that this arbitral panel, convened

---

[38] Joint App'x 126.

[39] *Guo*, 965 F.3d at 107.

[40] UNCITRAL, established in 1966, "is a subsidiary body of the General Assembly of the United Nations with the general mandate to further the

pursuant to the terms of the Treaty, thus retains affiliation with the foreign States, despite its functional independence in other ways. Accordingly, this factor weighs in favor of finding that this arbitral panel qualifies as a "foreign or international tribunal" within the meaning of § 1782.

### 2. *State Authority to Intervene or Alter Outcome*.

State authority to influence or control an arbitration pursued under this Treaty is limited, if not non-existent. Indeed, the Treaty curtails the ability of Lithuania or Russia to intervene in an arbitration under it or alter the outcome after the panel renders a decision.

---

progressive harmonization and unification of the law of international trade." UNCITRAL texts such as its model arbitration rules are drafted by "the Member States of the Commission and other States (referred to as 'observer States'), as well as interested international inter-governmental organizations . . . and non-governmental organizations . . . ." UNITED NATIONS COMM'N ON INTER'L TRADE LAW, *Frequently Asked Questions – Mandate and History* (last visited July 13, 2021), https://uncitral.un.org/en/about/faq/mandate_composition/history.

27

Additionally, the Fund has waived its right to have a Lithuanian court review the result from this arbitration.

We recognize that an arbitration against a foreign State, whether conducted pursuant to a bilateral investment treaty like this Treaty or otherwise, necessarily requires that the foreign State consent to subject itself to binding dispute resolution.[41] That said, if a foreign State against whom the arbitration is proceeding was allowed to control the arbitration's outcome, the purpose of a bilateral investment treaty like the Treaty here—which has the aim of encouraging investment between Russia and Lithuania—would be frustrated. In the circumstances presented here, we conclude that this factor—whether there is foreign State authority to intervene or alter the arbitration

---

[41] *Cf.* RESTATEMENT (FOURTH) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 458 note 6 (AM. LAW INST. 2018) ("In U.S. practice, bilateral investment treaties . . . may be enforced in courts in the United States and thus operate to remove a foreign state's sovereign immunity in such proceedings." (citing *Schneider v. Kingdom of Thailand*, 688 F.3d 68 (2d Cir. 2012) (holding that bilateral investment treaties provided conditions for the formation of written agreements to arbitrate under the New York Convention); *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384 (2d Cir. 2011) (same))).

outcome—is neutral as to whether this arbitral panel qualifies as a "foreign or international tribunal" within the meaning of § 1782.

   3.  *Nature of Jurisdiction Possessed by the Panel*.

Critically, the arbitral panel in this case derives its adjudicatory authority from the Treaty, a bilateral investment treaty between foreign States entered into by those States to adjudicate disputes arising from certain varieties of foreign investment, rather than an agreement between purely private parties or any other species of private contract.

In *Guo*, we observed that an "arbitral body under a bilateral investment treaty may be a 'foreign or international tribunal'" when it derives its adjudicatory authority from the "intervention or license of any government to adjudicate cases arising from certain varieties of

foreign investment."[42] The arbitral panel here is authorized to resolve the dispute between the Fund and Lithuania under the terms of the Treaty—a bilateral investment treaty—and thus closely resembles the sort of arbitral body that we anticipated in *Guo* would qualify as a "foreign or international tribunal." Accordingly, this factor weighs heavily in favor of concluding that this arbitral panel qualifies as a "foreign or international tribunal" within the meaning of § 1782.

4. *Arbitrator Selection Process.*

The process of selecting the members of the arbitral panel was conducted here in accordance with the Treaty. Each party selected one arbitrator and those two arbitrators were required to select a third arbitrator, who would preside. The three arbitrators selected are all private parties—two arbitration lawyers and one law professor—

---

[42] *Guo*, 965 F.3d at 108 n.7; *see also NBC*, 165 F.3d at 190 ("[A]n international tribunal owes both its existence and its powers to an international agreement." (quoting Hans Smit, *Assistance Rendered by the United States in Proceedings Before International Tribunals*, 62 COLUM. L. REV. 1264, 1267 (1962))).

which is suggestive of a "private" arbitration. But, as we noted in *Guo*, "this factor is not determinative, as agreements between countries to arbitrate disputes between their citizens may involve selection of the arbitrators by the parties"—including, of course, a foreign State party—"and such a tribunal may be a 'foreign or international tribunal' [under § 1782] notwithstanding this fact."[43] Accordingly, although this factor weighs against concluding that the arbitral panel is a "foreign or international tribunal," it is not determinative.

> 5. *Additional Attributes Suggestive of a "Foreign or International Tribunal"*

Consistent with *Guo*, we consider also any additional "functional attributes" that may suggest that the arbitral panel is a

---

[43] *Guo*, 965 F.3d at 108.

"foreign or international tribunal" rather than a "private arbitral body."[44] There are at least two such attributes here.

First, Lithuania, in its capacity as a foreign State, is one of the parties to this arbitration. In *Guo* we observed that the CIETAC arbitration was "between two private parties," thus differentiating it from the sort of arbitration presented here—one between a private party and a foreign State.[45]

Second, the importance of bilateral investment treaties as tools of international relations supports a conclusion that this arbitral panel, convened pursuant to the Treaty, constitutes a "foreign or international tribunal." Russia and Lithuania entered into this Treaty for the purpose of establishing favorable conditions for investments made by investors of one foreign State in the territory of the other, in

---

[44] *Id.* at 107–08.

[45] *Id.* at 108 n.7.

recognition "that the promotion and reciprocal protection of investments, based on the present Agreement, will be conducive to the development of mutually beneficial trade and economic, scientific and technical co-operation."[46] By its terms, the Treaty serves numerous foreign policy goals. That this arbitral panel was assembled pursuant to this Treaty—as part of this effort to facilitate mutually beneficial relations between Russia and Lithuania—signals that this arbitration differs from a private commercial arbitration.[47]

*     *     *

In sum, we hold that this arbitration between Lithuania and the Fund, taking place before an arbitral panel convened pursuant to the

---

[46] Joint App'x 70.

[47] *Cf. BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 32 (2014) (explaining that the Court granted a petition for certiorari concerning the "local litigation requirement" of a bilateral investment treaty because of "the importance of the matter for international commercial arbitration" and citing K. Vandevelde, *Bilateral Investment Treaties: History, Policy & Interpretation* 430–32 (2010) to explain "that dispute-resolution mechanisms allowing for arbitration are a 'critical element' of modern day bilateral investment treaties").

Treaty, a bilateral investment treaty to which Lithuania is a party, qualifies as a "foreign or international tribunal" under § 1782.

This holding is consistent with legislative intent. Before 1964, an older version of § 1782 provided discovery assistance "only to a tribunal established by a treaty to which the United States was a party and then only in proceedings involving a claim in which the United States or one of its nationals was interested."[48] In 1964, Congress amended § 1782 to "broaden" its reach beyond its original scope to allow discovery assistance to "intergovernmental tribunals *not* involving the United States."[49] Here, the arbitral panel closely resembles the tribunals included in § 1782's pre-amendment scope, once modified to include intergovernmental tribunals; it is a panel

---

[48] *NBC*, 165 F.3d at 190 (citing S. REP. No. 88-1580 (1964), *reprinted in* 1964 U.S.C.C.A.N. 3782, 3784 ("Senate Report")).

[49] *Id.* (emphasis added). Its scope was broadened because, "[c]learly, the interest of the United States in peaceful settlement of international disputes is not limited to controversies to which it is a formal party." *Id.* (quoting Senate Report at 3785).

"established by a treaty to which [Lithuania and Russia are parties] . . . in [a] proceeding[ ] involving a claim in which [Russia] or one of its nationals [is] interested."[50] Accordingly, finding that the instant arbitral panel is eligible for § 1782 discovery assistance is consistent with § 1782's modern expansion to include intergovernmental tribunals.

Thus, as the arbitration is a "proceeding in a foreign or international tribunal," the District Court did not err in concluding that the Fund may seek § 1782 discovery assistance.

## II.

The second statutory requirement of § 1782 at issue requires that the party seeking discovery assistance be an "interested person." The Fund asserts that it qualifies as an "interested person" under § 1782 as a litigant because the Fund initiated the arbitration as the assignee of

---

[50] *See* Senate Report at 3784.

a Snoras bank shareholder. We agree. Under *Intel*, "no doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782."[51]

AlixPartners contests the Fund's status as a "litigant" because the Fund has thus far failed to affirmatively submit proof, both in the arbitration and before this Court, that it is the assignee.[52] But AlixPartners's argument overcomplicates a straightforward inquiry. The Fund is plainly an "interested person" because it is a party to the very arbitration under way between the Fund and Lithuania that is the basis of this proceeding in a U.S. court.[53] Accordingly, the District

---

[51] *Intel*, 542 U.S. at 256.

[52] The arbitration has been bifurcated to first address this issue concerning the Fund's standing before proceeding to the merits.

[53] *See Certain Funds, Accts. and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 119 (2d Cir. 2015) ("[T]he [*Intel*] Court cited with approval the expansive definition [of 'interested persons'] provided by [Professor] Hans Smit, [the] leading academic commentator on the statute [and one who famously] played a role in its drafting. Professor Smit maintained that the phrase 'any interested person' is 'intended to include not only litigants before foreign and international tribunals, but also foreign and international officials as well as any other person . . . [who] merely possess[es]

Court did not err in determining that the Fund sufficiently demonstrated that it is an "interested person" for the purpose of § 1782.

## III.

Having held that the Fund qualifies as an "interested person" who properly applied for discovery assistance for use in a "proceeding in a foreign or international tribunal," we proceed to review the District Court's decision to grant the Fund's § 1782 discovery application. Finding no abuse of discretion, we affirm.[54]

Under § 1782, a district court may, in its discretion, grant discovery assistance after considering both the "twin aims" of § 1782

---

a reasonable interest in obtaining the assistance.' Hans Smit, *International Litigation Under the United States Code*, 65 COLUM. L. REV. 1015, 1027 (1965).").

[54] *Lancaster Factoring Co.*, 90 F.3d at 42 ("If the district court has properly interpreted the requirements of § 1782, its decision whether or not to order discovery is reviewed only for abuse of discretion. The court will be found to have abused its discretion only if there was no reasonable basis for its decision.") (internal citation, brackets, and quotation marks omitted).

and the so-called *Intel* factors. The twin aims of § 1782 are to "provid[e]

efficient means of assistance to participants in international litigation

in our federal courts" and to "encourag[e] foreign countries by

example to provide similar means of assistance to our courts."[55]

AlixPartners argues that discovery assistance would run

contrary to the second of those aims because there is no opportunity

for reciprocity, inasmuch as the arbitral panel here is composed of non-

governmental arbitrators and it exists only temporarily. However,

AlixPartners's focus on the *ad hoc* character of the arbitral panel

overlooks a more important point: that § 1782 discovery assistance

here would aid and enforce the efficacy of the Treaty itself. If the

United States or its citizens were involved in such an arbitration, the

Congressional policy of providing § 1782 discovery assistance in cases

---

[55] *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004) (citation omitted). § 1782 provides assistance to participants in international litigation by directing that "[t]he district court of the district in which a person resides or is found may order him to give [discovery] for use in a proceeding in a foreign or international tribunal."

such as this would encourage other countries to provide similar means of assistance. Accordingly, we find no abuse of discretion in the District Court's finding that granting § 1782 discovery assistance is consistent with the statute's twin aims.

Likewise, we find no abuse of discretion in the District Court's consideration of the *Intel* factors. The *Intel* factors to be considered are: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome."[56]

---

[56] *Intel*, 542 U.S. at 264–65.

As to the first *Intel* factor, the Fund asserts that it cannot obtain the same documents and testimony from Lithuania as from AlixPartners, LLP, Freakley's current employer, because the Fund seeks responsive documents and communications beyond those accessible through Lithuania. The Fund also seeks to depose Freakley. We agree with the District Court that this factor weighs in favor of granting the discovery request. AlixPartners is not a participant in this arbitration and is otherwise outside the arbitral panel's jurisdictional reach as a third party, and the evidence sought is not otherwise readily discoverable.

Second, the District Court properly found that consideration of "the receptivity of the foreign [tribunal] to U.S. federal-court judicial assistance" weighs in favor of granting the Fund's discovery request. Absent authoritative proof that a foreign tribunal would reject the evidence, we have explained that a court should generally allow

discovery if doing so would further § 1782's goals.[57] As emphasized by the Fund here, the arbitral panel declined to bar the Fund from seeking § 1782 discovery, which suggests that the panel would be receptive to such discovery if obtained.[58] In the words of the District Court, "there is no reason to doubt that the [arbitral panel] would be receptive to U.S. federal-court judicial assistance."[59]

Third, although AlixPartners argues that Lithuanian bank secrecy laws prohibit the disclosure of the documents sought by the Fund, the provision of § 1782 that "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege" is not as expansive as it may at first blush appear.

---

[57] *See Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995).

[58] Joint App'x 219–20.

[59] *In re Fund for Protection of Inv. Rights in Foreign States*, 2020 WL 3833457, at *3.

41

Indeed, in *Intel*, the Supreme Court expressly held that § 1782 does not have a "foreign-discoverability rule" that would "categorically bar a district court from ordering production of documents where the foreign tribunal or 'interested person' would not be able to obtain the documents if they were located in the foreign jurisdiction."[60] Likewise, in *Brandi-Dohrn*, we held that there is no statutory basis for a foreign-*admissibility* requirement.[61] Accordingly, the foreign tribunal is "free to exclude the evidence or place conditions on its admission."[62] When the arbitral panel declined to bar the Fund from pursuing this § 1782 application in its December 2019 order, it stated that it would consider evidence in accord with this concept. The arbitral panel indicated that barring discovery at that stage would be "premature" despite Lithuania's argument that it "should not be

---

[60] *Intel*, 542 U.S. at 259–60.

[61] *Brandi-Dohrn*, 673 F.3d at 82.

[62] *Id.*

receptive to allowing the [§ 1782] evidence."[63] Instead, the arbitral

panel determined that

> [Lithuania] will be able to contest any evidence that might be obtained pursuant to the [Fund's §] 1782 Application . . . before the Tribunal. In particular, as argued by the [Fund], [Lithuania] will have the opportunity in due course to object to the admissibility of any such evidence at issue - if the [Fund] introduces it into the record - on the basis of privilege allegedly accorded to this evidence by Lithuanian banking law.[64]

Likewise, the District Court observed that the privileges

identified by AlixPartners "may regulate conduct in Lithuania and

govern proceedings there, but [the Fund] seeks discovery for use in an

international proceeding, with its own rules governing discoverability

and admissibility of evidence"—and UNCITRAL arbitration rules do

not appear to prohibit acquisition or use of the information sought by

---

[63] Joint App'x 220.

[64]*Id.* at 219.

the Fund.[65] Therefore, the District Court stated, if AlixPartners believes that a privilege under Lithuanian law applies such that it is prevented from disclosing certain documents, AlixPartners may "seek a protective order or otherwise raise objections to the relevant portion of [the Fund's] discovery request."[66]

This approach—to address discoverability and admissibility issues as they arise rather than to impose a categorical bar in the first instance—is in accord with the legislative history of § 1782, which left "the issuance of an appropriate order to the discretion of the court which, in proper cases, may refuse to issue an order or may impose conditions it deems desirable."[67] A holding to the contrary, as we have

---

[65] *In re Fund for Protection of Inv. Rights in Foreign States*, 2020 WL 3833457, at *3.

[66] *Id.* at *3.

[67] *Intel*, 542 U.S. at 260–61 (quoting Senate Report at 3788); *see also Brandi-Dohrn*, 673 F.3d at 81 ("[A]lthough there is no requirement under § 1782 that the type of discovery sought be available in the relevant foreign jurisdiction, a court may look to the nature, attitude and procedures of that jurisdiction as 'useful tool[s]' to inform its discretion.") (quoting *Schmitz*, 376 F.3d at 84).

observed, would "requir[e] a district court to apply the admissibility laws of the foreign jurisdiction[, which] would require interpretation and analysis of foreign law and such '[c]omparisons of that order can be fraught with danger.'"[68] That danger is apparent in this case— AlixPartners and the Fund disagree as to whether the material sought is privileged under Lithuanian law, and whether such privileges would apply in this treaty arbitration, governed as it is by UNCITRAL rules that make it likely that the arbitral panel would apply Lithuanian law to substantive matters. Accordingly, we find no error in the District Court's determination that it would consider the Lithuanian privilege issue as necessary and appropriate as discovery proceeds, such as by granting protective orders or hearing objections.[69]

Fourth, the District Court did not err in finding that the Fund's request is not "unduly intrusive or burdensome" under Federal Rule

---

[68] *Brandi-Dohrn*, 673 F.3d at 82 (quoting *Intel*, 542 U.S. at 263).

[69] *See, e.g.*, *Mees v. Buiter*, 793 F.3d 291, 303 n.20 (2d Cir. 2015).

of Civil Procedure 26.[70] We agree with the District Court that the Fund's "requests go to the heart of [its] case in the [a]rbitration, and appear to be proportionate to [its] needs."[71] And, as discussed above, AlixPartners "may apply to [the District] Court for a protective order or for other relief as necessary to appropriately limit discovery."[72]

All in all, we cannot conclude that the District Court erred, much less abused its discretion, in weighing the relevant factors and

---

[70] *In re Fund for Protection of Inv. Rights in Foreign States*, 2020 WL 3833457, at *4.; *see Mees*, 793 F.3d at 302 ("[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."); Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.").

[71] *In re Fund for Protection of Inv. Rights in Foreign States*, 2020 WL 3833457, at *4.

[72] *Id.* (citing *In re Accent Delight Int'l Ltd.*, 791 F. App'x 247, 252 (2d Cir. 2019) ("[T]he district court did not abuse its discretion by concluding that [p]etitioners' requests would not be unduly burdensome and that, if issues arose, they could be resolved through a protective order.")).

concluding that they favored granting of the Fund's § 1782 application.[73]

IV.

As a final matter, AlixPartners argues that the District Court abused its discretion in denying AlixPartners's motion for reconsideration. AlixPartners takes issue with what it characterizes as the District Court's "bright-line rule" that "arbitrations conducted pursuant to a bilateral investment treaty like the [Treaty before us here] do qualify as 'foreign or international tribunals' under § 1782."[74]

We disagree with that characterization of the District Court's decision. As the foregoing discussion makes clear, we do not create a "bright-line rule" that all arbitrations conducted pursuant to a bilateral investment treaty qualify as a "foreign or international tribunal," and

---

[73] *See supra* note 22.

[74] Appellants Br. 54 (quoting *In re Fund for Protection of Inv. Rights in Foreign States*, 2020 WL 5026586, at *2).

the District Court likewise created no such rule. Instead, we hold that the features of this particular arbitration, conducted pursuant to this Treaty, are consistent with the functional features of foreign or international arbitral tribunals that, as we emphasized in *Guo*, differentiate such arbitrations from private commercial arbitration. In these circumstances, we find no abuse of discretion in the District Court's denial of reconsideration of its July 8, 2020 Order.

**CONCLUSION**

To summarize, we hold as follows:

(1) After considering the relevant *Guo* factors, this arbitration is between an investor and a foreign State party to a bilateral investment treaty (here, the Treaty), taking place before an arbitral panel established by that Treaty, and therefore it is a "proceeding in a foreign or international tribunal" under § 1782.

48

(2) The Fund is a party to the arbitration for which it seeks discovery assistance and the Fund is therefore an "interested person" under § 1782.

(3) The District Court did not abuse its discretion or otherwise err in determining that the *Intel* factors weigh in favor of granting the Fund's application for discovery assistance.

For the foregoing reasons, we **AFFIRM** the July 8, 2020 Order and the August 25, 2020 Order of the District Court.